UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

GARY LABARBERA; LAWRENCE KUDLA;
THOMAS GESUALDI; LOUIS BISIGNANO;
ANTHONY PIROZZI; FRANK FINKEL; JOSEPH      REPORT AND
FERRARA, SR.; LYNN MOUREY; MARC            RECOMMENDATION
HERBST and THOMAS PIALI as Trustees
and Fiduciaries of the Local 282           06-CV-5306 (DLI)(MDG)
Welfare, Pension and Annuity Trust
Funds,

                              Plaintiffs,

        - against -

ASTC LABORATORIES, INC.; AMERICAN
STANDARD TESTING LABORATORIES, INC.
and AMERICAN STANDARD TESTING AND
CONSULTING LABORATORIES, INC.,

                              Defendants.

- - - - - - - - - - - - - - - - - X


        Plaintiffs, the trustees of the Local 282 Welfare, Pension

and Annuity Trust Funds, brought this action against Defendants

ASTC Laboratories, Inc., American Standard Testing Laboratories,

Inc. and American Standard Testing and Consulting Laboratories,

Inc. to recover benefits and contributions they claim are owed by

Defendant-employers pursuant to a collective bargaining agreement.

After reinstating entry of default against Defendant ASTC

Laboratories, Inc., the Honorable Dora L. Irizarry referred this

matter to the undersigned for an inquest on damages. See

Electronic Order filed 6/24/10.

Overview

Because of the confusion that has occurred due to the similarity in the names of the defendants, a brief overview is provided. The dispute in this case arises from the obligations of ASTC Laboratories, Inc. ("ASTC Labs" or "defaulting defendant") to pay contributions to a multiemployer pension plan. The plaintiff Trustees contend that because the other two named defendants, American Standard Testing Laboratories, Inc. ("ASTL") and American Standard Testing and Consulting Laboratories, Inc. ("AST Consulting"), are alter-egos of ASTC Labs, ASTC Labs is liable for contributions owed for these two defendants. AST Consulting was the only defendant that appeared in this action and vigorously disputed its legal connection with ASTC Labs. However, following completion of discovery and the filing of cross-motions for summary judgment, AST Consulting filed for protection under the bankruptcy laws and the claims against it were subject to the automatic stay in bankruptcy. Plaintiffs never sought entry of default against defendant ASTL and later formally withdrew its claims against this defendant. The issues raised by plaintiffs in their motion for default judgment concern the damages owed by ASTC Labs because of its failure to submit to an audit and pay contributions for covered work by AST Consulting.

Prior Proceedings

On September 27, 2006, the Trustees of the Local 282 Welfare, Pension and Annuity Trust Funds ("Trustees") commenced this action against Defendants ASTC Labs and ASTL seeking an audit of Defendants' books and records and payment of unpaid benefit contributions, interest, liquidated damages, attorney's fees and costs. See Compl. (ct. doc. 1). On January 5, 2007, Plaintiffs amended their complaint to add an additional defendant, AST Consulting, alleging, among other things, that it was an alter ego of ASTC Labs. See Am. Compl. (ct. doc. 5). AST Consulting later appeared in this action but ASTC Labs neither answered or responded to either complaints nor otherwise appeared in this action to date.  On April 24, 2007, Plaintiffs moved for default against ASTC Labs. See ct. doc. 11.  After the Clerk of the Court noted entry of default (ct. doc. 27), Judge Irizarry granted default judgment and referred the matter to the undersigned for an inquest on damages. See Electronic Order filed 9/10/07.  On July 4, 2008, Judge Irizarry withdrew the Order granting default judgment against ASTC Labs.  See Electronic Order filed 7/4/08. After attempting to clarify the confusion caused by the similar names of the parties to this action, Plaintiffs indicated that they were not proceeding against Defendant ASTL,[1] and asked that

---

[1] Because Plaintiffs voluntarily dismissed the action against the Defendant ASTL (ct. doc. 95), this Court will not discuss the facts presented in the submissions relating to this entity.

the default judgment be reinstated against ASTC Labs.  <u>See</u> ct.

doc. 49.

In the meanwhile, the Trustees moved pursuant to Fed. R. Civ.

P. 56 for summary judgment against Defendants AST Consulting and

ASTC Labs.  Arguing that the two entities constitute a single

employer and are alter egos of one another, the Trustees contended

that the two corporations used their separate status to evade

their obligations to pay benefit contributions under the relevant

CBAs.  Defendant AST Consulting opposed the motion and cross-moved

pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the

complaint against it.  By Order dated August 14, 2008, Judge

Irizarry withdrew the denial of default against ASTC Labs but

stayed it pending the outcome of the summary judgment motions.  <u>See</u>

Electronic Order filed 8/14/08.  The summary judgment motions were

referred to the undersigned for report and recommendation.  <u>See</u>

Electronic Order filed 9/22/09.  By letter dated June 2, 2010,

counsel for Defendant AST Consulting notified the Court that his

client had filed for protection under Chapter 11 of the bankruptcy

laws which stayed all litigation against the entity.  <u>See</u> ct. doc.

93.  Upon Plaintiffs' request, Judge Irizarry subsequently

reinstated default judgment against the only remaining defendant,

ASTC Labs, and referred the motion to the undersigned for an

inquest on damages and/or attorneys' fees.  <u>See</u> Electronic Order

filed 6/24/10.

## PERTINENT FACTS

The facts pertinent to this matter are set forth in the Amended Complaint (ct. doc. 5); Declaration of Jae W. Chun in Support of Plaintiffs' Request for a Default Judgement against ASTC Labs ("Chun 4/16/07 Decl.") (ct. doc. 12); Declaration of Theresa Cody in Support of Plaintiffs' Request for a Default Judgement against ASTC Labs ("Cody 3/2/07 Decl.") (ct. doc. 13); Declaration of Ken Jones in Support of Plaintiffs' Request for a Default Judgement against ASTC Labs ("Jones 4/23/07 Decl.") (ct. doc. 14). These facts are undisputed, except as indicated below.

Plaintiffs are Trustees of the Local 282 Welfare, Pension and Annuity Trust Funds ("Funds"). Am. Comp. ¶ 7. The Funds are multi-employer employee benefit plans that were established pursuant to the terms of various collective bargaining agreements ("CBAs") between Teamsters Local 282 ("Local 282") and various employers. Id. ¶ 5. The Funds provide retirement, annuity, and health and welfare benefits to eligible members of Local 282 and are operated pursuant to the terms of an Agreement and Declaration of Trust ("Trust Agreement"). Id. Employers who are signatories to the CBA's are required to make contributions to the Funds on behalf of their employees covered by the CBA and to submit detailed remittance reports of hours worked and/or paid in covered employment each month. Id. at ¶¶ 48,51. Pursuant to the Trust Agreement, the Trustees may audit the books and records of contributing employers and their affiliates to verify the employer's contributions to the Funds. Cody 3/2/07 Decl. ¶ 5.

The defaulting defendant, ASTC Labs, is a New York corporation that entered into a CBA with Local 282, which <u>inter alia</u>, covered employment of certain employees of ASTC Labs. Am. Comp. ¶¶ 8,11. Specifically, on July 14, 2000, ASTC Labs signed the 1999-2002 Construction & Materials Inspection Industry Memorandum of Agreement, a CBA involving Local 282 which was effective May 1, 1999 through April 30, 2002. <u>See</u> Cody 3/2/07 Decl. Exh. B pp. 2-4.  Following the expiration of this agreement on April 30, 2002, ASTC Labs continued to submit remittance reports through December 31, 2004 and to make contributions in accordance with the rates set forth in a subsequent CBA (the "2002-2005 Agreement"), which covered the period from May 1, 2002 through April 30, 2005. Cody 3/2/07 Decl. ¶ 9.  ASTC Labs did not submit remittance reports beginning January 2005. Chun 4/16/07 Decl. ¶ 12.[2]  The reports that ASTC Labs submitted for the period from July 2000 to December 2004 did not include hours worked by employees in covered employment that appeared on the payroll of AST Consulting.  Am. Comp. ¶ 57.

Defendant AST Consulting is a New York corporation, with a principal place of business in College Point, New York. Am. Comp. ¶ 10.  ASTC Labs and AST Consulting shared common ownership, management, operations, supervision, customers, equipment,

---

[2] Although the Amended Complaint states that ASTC Labs submitted remittance reports through March 2005, (Am. Comp. ¶ 55), the Declarations of Chen, Cody and Jones that Plaintiffs submitted in support of default judgment, as well as the exhibits attached thereto, indicate that ASTC Labs submitted remittance reports only through December 2004.

vehicles, a common business purpose, and the companies' employees shared similar working conditions, job classifications, skills and job functions, interchanged between the two companies and worked out of the same locations. Id. ¶¶33-43, 45-56.[3] As such, Plaintiffs contend that ASTC Labs channeled work to AST Consulting to avoid ASTC Labs' obligations under the CBAs with Local 282. Am. Comp. ¶ 47.

On or about June 22, 2006, the Trustees demanded that ASTC Labs produce the books and records of all of its affiliated companies, including AST Consulting, for an audit within 21 days. Am. Comp. ¶ 68. On or about August 9, 2006, ASTC Labs refused to produce the books of AST Consulting and requested that the Trustees revoke their audit demand. Id.¶ 69; Cody 3/2/07 Decl. ¶ 10. The Trustees did not revoke their audit demand and treated the failure of ASTC Labs to comply a violation of the CBAs and Trust Agreement. Id. ¶¶ 70, 73.

DISCUSSION

## I. Default Judgment Standard

Entry of a default judgment is a two-step process and requires first that the clerk of the court "enter the party's

---

[3] By letter dated November 7, 2006, counsel for defendants AST Consulting stated that the company had neither operated nor employed any employees since its formation. Am. Comp. ¶ 71. Notwithstanding contrary views offered by AST Consulting, given the default of ASTC Labs and its failure to dispute Plaintiffs' allegations, Plaintiffs' allegations are accepted as true for purposes of this motion.

default" indicating that a party has "failed to plead or otherwise defend." Fed. R. Civ. 55(a). After the clerk's entry of default, the opposing party generally requests that a court enter a default judgment against the defaulting parties. See Fed. R. Civ. P. 55(b)(2). A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc. et al., 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Leider v. Ralfe, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting In re Indus. Diamonds Antitrust Litig., 119 F.Supp. 2d 418, 420 (S.D.N.Y. 2000)).

A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. See Au Bon Pain, 653 F.2d at 69-70. The movant need prove "only that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Id. The court must determine the amount of damages, actual or statutory, that may be assessed. The court must also ensure that there is a reasonable basis for the damages specified in a default judgment. The court has the discretion to require an evidentiary hearing or to rely on

-8-

detailed affidavits or documentary evidence in making this determination.  See Fed. R. Civ. P. 55(b)(2).  Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases).  The moving party is entitled to all reasonable inferences from the evidence it offers.  See Finkel v. Romanowitz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65 (citing TWA, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

## II. Liability under ERISA and the Trust Agreement

Section 209(a) of ERISA, 29 U.S.C. § 1059(a), provides that an employer is required to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."  Section 515 of ERISA, 28 U.S.C. § 1145, provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement ... make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.

The Trustees of the Funds "may at any time audit the pertinent books and records of any employer in connection with" such employer's contributions to the Funds.  Trust Agreement, Art. IX(1)(f); Cody 3/2/07 Decl. ¶ 5.  If an employer "fails to submit the pertinent books and records for audit within 20 days after written demand, such failure shall be a material breach of the Trust Agreement." Id.

Plaintiffs have established that Defendants violated ERISA, 29 U.S.C. §§ 1059(a) and 1145, the terms of the Trust Agreement and the applicable collective bargaining agreements.

As a preliminary matter this Court addresses the question of the appropriate time period for ASTC Labs' liability. ASTC Labs is liable for contributions through April 30, 2002 by virtue of having signed the CBA expiring on that day. However, as Plaintiffs conceded at a hearing on August 2, 2010, ASTC Labs did not sign any CBA after the expiration of the 1999-2002 CBA. See ct. doc. 96, at 4-5. Nor does the 1999-2002 CBA that ASTC Lab signed provide for automatic renewal.

Even though ASTC Labs may not have signed a subsequent CBA, it may nonetheless be bound. A CBA need not be signed so long as the parties agree to its substantive terms. See American Federation of Telephone and Radio Artists v. Inner City Broadcasting Corp., 748 F.2d 884, 886-87 (2d. Cir. 1984). A writing other than a CBA may suffice if "the employer has expressed an 'unequivocal intention to be bound in collective bargaining by group rather than individual action.'" Wenzel v. Jeff Parking Corp., No. 94 CV 0831, 1995 WL 258055 at *3 (S.D.N.Y. May 3, 1995)(citations omitted). A court should examine surrounding circumstances and the conduct of the parties to ascertain the parties' intent. See Teamsters, Chauffers, Warehousemen and Helpers, Local Union No. 182 v. New York State Teamsters Council Health & Hospital Fund, 909 F. Supp. 102, 107 (W.D.N.Y. 1995).

ASTC Labs signed and submitted 32 remittance reports for over 2
1/2 years (from May 1, 2002 through December 31, 2004) after the
expiration of the CBA.  <u>See</u> Cody 3/2/07 Decl., Exh. D.   These
remittance reports contain the provision that "[b]y signing this
report you agree to accept the terms of the current Local 282
industry collective bargaining agreement covering the work
performed by your employees."  Am. Comp. ¶ 15; Cody 3/2/07 Decl.
Exh. D.  Given this language in the remittance reports, the large
number of remittance reports that ASTC Labs submitted in
accordance with the CBA it did not sign and the fact that ASTC
Labs had previously been a signatory to a CBA, there is ample
evidence to support a finding that ASTC Labs intended to be bound
to the terms of a CBA from May 1, 2002 through April 30, 2005.
<u>See</u> <u>Moriarty v. Brust Funeral Home, Ltd.</u>, No. 95 CV 333, 1995 WL
472771 at *11 (N.D.Ill. Aug. 8, 1995) ("timely filing of
remittance reports together with payments to the funds . . .
'forcefully demonstrate' adoption of a collective bargaining
agreement" where employer filed signed and unsigned monthly
remittance reports for nine years) (citations omitted); <u>see</u> <u>also</u>
<u>Del Turco v. Speedwell Design</u>, 623 F.Supp.2d 319, 346 (E.D.N.Y.
2009) (finding signed remittance reports referencing CBAs and paid
contributions sufficient to constitute written agreements);
<u>Trustees of the Chicago Plastering Institute Pension Trust et al.</u>
<u>v. Solarcrete Energy Eff. Building Sys. Inc.</u>, No. 04 CV 7820, 2009
WL 3055383 at *7 (N.D.Ill. Sept. 17, 2009) (by sending in signed
monthly reports for over ten years containing language affirming

-11-

that the signatory was bound by the CBA and paying contributions, defendant demonstrated that it was operating as though it were bound by a CBA). Thus, ASTC Labs is liable for contributions owed during the period that the subsequent CBA was in effect, that is from May 1, 2001 through April 30, 2005. However, since neither ASTC Labs nor any others signed a CBA or submitted remittance reports covering work after April 30, 2005, ASTC Labs is not liable for contributions due after this date.

Defendant ASTC Labs was required by the two CBAs to comply with the requirements in the Trust Agreement, including submitting remittance reports and paying fringe benefit contributions to the Funds for itself and its affiliates for all covered work. Furthermore, the defaulting Defendant was obligated to produce books and records of its affiliate AST Consulting and submit to an audit as demanded by the Trustees. As Plaintiffs allege in the Amended Complaint, the two companies used the same offices, had common management and ownership and shared equipment and employees. Although AST Consulting contested Plaintiffs' claim that it was an alter ego of ASTC Labs, drawing all inferences in favor of Plaintiffs from the well-pled allegations in the Amended Complaint against ASTC Labs, this Court finds that Plaintiffs have sufficiently established that AST Consulting is affiliated with ASTC Labs. Thus, ASTC Labs violated the terms of the CBAs at issue by not submitting to an audit of the records of AST Consulting and paying contributions for their employees.

Having established liability, Plaintiffs may be entitled to an award of damages as permitted by 29 U.S.C. § 1132(g)(2) and the formulae set forth in the Trust Agreement.

## III. Determination of Damages

### A.  Governing Law and Agreements

Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2), provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

> (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of -- (I) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan not in excess of 20 percent ... of the [unpaid contributions]; (D) reasonable attorney's fees and costs of the action ....

29 U.S.C. § 1132(g)(2).

### 1. Contributions

The Trust Agreement provides two formulas for determining the amount of contributions due when an employee fails to provide books and records for audit depending on whether an employer has submitted remittance reports.  Chun 4/16/07 Decl. ¶11; Jones 4/23/07 Decl. ¶7.  In the first scenario, where an employer fails to submit remittance reports as well as books and records for audit, the Funds are entitled to monthly contributions equal to the current rate of contribution to each of the Funds, multiplied by 110% of the number of hours for the month in which the largest number of hours were reported in the last twelve reports submitted by the employer. See Jones 4/23/07 Decl. ¶9; Cody 3/2/07 Decl.

Exh. A Trust Agreement, Art. IX(1)(e).  Where an employer has
submitted remittance reports but has failed to submit books and
records for audit, the contributions due shall be equal to 150% of
the number of hours reported by the employer for each month
covered by the period for which the audit is sought, multiplied by
the current contribution rate.  <u>See</u> Jones 4/23/07 Decl. ¶8; Cody
3/2/07 Decl. Exh. A Trust Agreement, Art. IX(1)(f).

    <u>2. Interest</u>

The amount of interest due for unpaid contributions must be
"determined by using the rate provided under the plan, or, if
none, the rate prescribed under Section 6621 of Title 26."  29
U.S.C. § 1132(g)(2)(B).  The Trust Agreement specifies that the
trustees are entitled to interest for unpaid contributions.  It
provides, in pertinent part:

> [A]n Employer in default for five working days shall be
> obligated to pay interest at the rate specified in
> Section 5-501 of the General Obligations Law of the
> State of New York, as the same may be amended from time
> to time, on the monies due to the trustees from the
> first day of the month when the payment was due to the
> day when the payment was made[.]

Trust Agreement, Art. IX, § 3.  Section 5-501 of the General
Obligations Law states, in pertinent part, that the "rate of
interest ... shall be six per centum per annum unless a different
rate is prescribed in section fourteen-a of the banking law."
N.Y. GOL § 5-501.  Section 14(a) of the New York Banking Law
states that "[t]he maximum rate of interest provided for in
section 5-501 of the general obligations law shall be sixteen per

centum per annum." N.Y. Banking Law § 14-a. The Second Circuit has interpreted the same Trust Agreement provision as prescribing an interest rate of 16 percent per annum. See LaBarbera v. A. Morrison Trucking, Inc., 197 Fed.App'x 18 (2d Cir. 2006) (observing that §14-a(5) of the New York Banking Law "makes it clear that the 'maximum' rate of interest referenced in Section 14-a(1) is also the 'prescribed' rate of interest for purposes of New York General Obligations Law §5-501(a)"). However, effective October 28, 2003, the Trust Agreement was amended to provide for an interest rate of "1½% per month of each monthly amount due for each month from the first day of the month when the payment was due to the day when the payment was made[.]" Accordingly, interest should be calculated at a rate of 16% per annum through October 2003 and 18% per annum from November 2003.

B. Calculation of Contributions Due

Plaintiffs seek unpaid contributions and interest for the period from July 1, 2000 through March 31, 2007. Chun 4/16/07 Decl. ¶12.

In support of their calculations for contributions due, Plaintiffs submitted audit reports and worksheets covering four periods: (1) July 2000 - November 2002 (Jones 4/23/07 Decl. Exh. A, pp. 1-13)(ct. doc. 14), (2) December 2002 - December 2003 (Id. pp. 14-19), (3) January 2004 - July 2004 (Id. pp. 20-25) and (4) January 2005 - March 2007 (Id. pp. 26-38). After examining the remittance reports of ASTC Labs included in Plaintiffs' submissions (Cody 3/2/07 Decl., Exh. D), as well as the above

mentioned audit reports and worksheets, this Court is satisfied that Plaintiffs, for the most part, have correctly calculated the amounts due.  The audit worksheets contain the information set forth in the remittance reports of the defendants and properly applied the formulae set forth in the Trust Agreement.  However, since, as discussed above, ASTC Labs is liable for contributions only through April 2005, no amount should be awarded for contributions due after April 2005 and the amounts claimed by Plaintiffs' must be accordingly limited.

The first three audits concerned the contributions due July 1, 2000 through December 31, 2004, a time period during which ASTC Labs submitted monthly remittance reports.  Chun 4/16/07 Decl. ¶12.  Under the applicable formula in the Trust Agreement, the monthly contributions due from July 1, 2000 through December 31, 2004 are calculated by taking 150% of the number of hours reported for each month and multiplying that number by the contribution rates under current rates.  In their calculations on the worksheets, the Plaintiffs utilized the rates of contributions in effect beginning May 1, 2005, which, as set forth in the CBA for May 1, 2005 through April 30, 2010, are $7.45 per hour for the Welfare fund and $1.20 per hour for both the Pension and Annuity Funds.  See Cody 3/2/07 Decl. ¶ 14 and CBA attached as Exh. C at 17.  Use of these rates is appropriate since they are the rates in effect at the time Plaintiffs sought on audit in June 2006, as well during March 2007 when Plaintiffs filed their motion for default judgment.  Thus, I recommend that this Court consider

-16-

these rates to be "current rates" in accordance with the terms of the Trust Agreement. As noted, this Court finds that Plaintiffs' computations on the worksheets, which apply these rates, are correct.

The fourth audit covered the period from January 2005 through March 31, 2007, a time period during which ASTC Labs failed to submit remittance reports. Chun 4/16/07 Decl. ¶12. In their applicable worksheet, Plaintiffs applied the other formula under the Trust Agreement: first multiplying 304.5 hours (the hours reported for the month of April 2004, which represented the largest number of hours reported in the previous 12 months from January 2004 through December 2004) by 110% and then further multiplying the product, 334.9 hours, by the current contribution rate to the various Funds. See Jones 4/23/07 Decl. Exh. B (last column, 16th figure down). However as discussed above, ASTC Labs is liable for contributions only from January 1, 2005 through April 30, 2005. Thus, this Court has used the calculations in the worksheet for only these four months and multiplied 1339.6 hours (334.9 hours multiplied by 4 mos.) by the applicable contribution rates. This yields a total of $13,195.06 for contributions due, rather than the $89,080.45 originally calculated by plaintiffs for contributions due through March 31, 2007. A modified worksheet for the amounts due from January 1, 2005 through April 30, 2005 is attached hereto as Appendix A.

The calculations for unpaid contributions due for the period from July 1, 2000 through April 30, 2005 contained in the

worksheets for the four audits, as modified, are summarized and set forth below:

(1) <u>July 2000 - Nov. 2002</u> (Jones 4/23/07 Decl., Exh. A at 1)

    5145.50 hrs. X $7.45 (welfare rate) =   $ 38,333.98

    5145.50 hours X 1.20 (pension rate) =     6,174.60

    5097.75 hrs X 1.20 (annuity rate)   =     6,117.30

                                                $ 50,625.88

(2) <u>Dec. 2002 - Dec. 2003</u> (<u>id.</u>, Exh. A at 14)

    2,065.25 hrs X 7.45 (welfare rate) =     15,386.11

    2,065.25 hrs X 1.20 (pension rate) =      2,478.30

    2,065.25 hrs X 1.20 (pension rate) =      2,478.30

                                             20,342.71

(3) <u>Jan. 2004 - Dec. 2004</u>[4]  (<u>id.</u>, Exh. A at 20)

    954.0 hrs X 7.45 (welfare rate) =     $   7,107.30

    954.0 hrs X 1.20 (pension rate) =       1,144.80

    954.0 hrs X 1.20 (annuity rate) =       1,144.80

                                              9,396.90

(4) <u>Jan. 2005 - April 2005</u> (<u>id.</u>, Exh. A at 20)

    1339.6 hrs X 7.45 (welfare rate)  =     $   9,980.02

    1339.6 hrs X 1.20 (pension rate)  =       1,607.52

    1339.6 hrs X 1.20 (annuity rate)  =       1,607.52

                                             13,195.06

       TOTAL CONTRIBUTIONS DUE         $        93,569.55

Thus, I respectfully recommend that this Court award Plaintiffs $93,560.55 for the contributions owed by ASTC Labs.

---

   [4] The remittance reports for the period from August 2004 through December 2004 indicate that there was no work performed. <u>See</u> Jones 4/23/07 Decl., Exh. A at 23-24. The worksheets thus reflect that no contributions are due for these five months. Although the audit report refers to amounts owed only through July 2004, the period of time should be through December 2004.

<u>C.  Calculation of Interest</u>

As discussed above, the Trust Agreement initially provided for interest on the unpaid contributions at a rate of 16%.  By amendment to the Trust Agreement effective October 28, 2003, the interest rate was increased to 18%.  Plaintiffs submitted their interest calculations on the worksheets for the same four audit reports mentioned above.  After examination of this aspect of the worksheets, I find that the computations are correct.  However, Plaintiffs used the wrong interest rates for some portion of time covered in the first two audit periods by not properly applying the change in the interest rate at the end of October 2003.  For the first audit period covering contributions due from July 2000 through December 2002, Plaintiffs continued to use the original 16% interest rate for the unpaid contributions through March 31, 2007, even though entitled to the higher 18% interest rate after October 2003.  On the other hand, Plaintiffs prematurely applied the 18% interest rate in their calculations for the second audit period for all contributions due from December 2002 through December 2003, even though the interest on the eleven monthly contributions becoming due from December 2002 through October 2003 should have been calculated at the 16% interest through October 28, 2003.

However, as this Court observed at a hearing on August 2, 2002, the 2% shortfall in interest from October 28, 2003 through March 31, 2007 on unpaid contributions of $50,625.88 due from July 2000 through November 2002 (the first audit period) is far greater

than the 2% overcharge in interest on the unpaid contributions
becoming due during the ten months from January 2003 through
October 2003. Although recognizing that his clients would thus be
entitled to recover greater interest if given an opportunity to
submit revised calculations, Plaintiffs' counsel stated at the
August 2, 2010 hearing that his clients would be prepared to
accept a lower interest calculation if permitted to rest on their
initial submissions. <u>See</u> ct. doc. 96, at 6-7. I thus recommend
accepting Plaintiffs' submitted calculations for interest due
through March 31, 2007 with respect to contributions covered by
the first three audit periods, rather than requiring re-
calculation of interest for time periods involved.

For the fourth audit period, Plaintiffs' interest
calculations on their worksheet are too high since they include
interest on unpaid contributions through March 31, 2007. Because
they are entitled to recover unpaid contributions due only through
April 2005, as discussed above, Plaintiffs are not entitled to
recover interest for the other contributions. I have included in
Appendix A the interest calculations adapted from Plaintiffs'
worksheets from January 2005 through April 2005, the first four
months covered by the audit. As modified, Plaintiffs are entitled
to interest through March 31, 2007 on these four months of
$4,842.02.

When Plaintiffs first submitted its motion for default
judgment, they included interest calculations only through March
31, 2007. Plaintiffs are now entitled to additional interest on

unpaid contributions from March 31, 2007 until entry of judgment. Interest of 18% on the unpaid contributions of $93,569.55 accrues at a daily rate of $46.14 per day. The interest on the unpaid contributions for the 1,277 days from March 31, 2007 through September 27, 2010 amounts to $58,920.78.

The interest calculations reflected in Plaintiffs' worksheets, as modified by Appendix A, for interest accrued through March 31, 2007 on the unpaid contributions as well as the additional interest accruing through September 27, 2010 are summarized as follows:

Interest due through 3/31/07

| | |
|---|---|
| Int. on 7/1/00-11/30/02 contrib. | $ 45,178.13 |
| Int. on 12/1/02-12/31/03 contrib. | 13,991.15 |
| Int. on 1/1/04-12/31/04 contrib. | 5,061.20 |
| Int. on 1/1/05-4/30/05 contrib. | 4,842.02 |

Total interest due through 3/31/07                69,072.50

Interest from 3/31/07 through 9/27/10

18% Interest on $93,560.55
from 4/1/07-9/27/10
($46.14/day for 1277 days)                        58,920.78

TOTAL INTEREST due through 9/27/10  =        $ 127,992.28

Thus, I respectfully recommend that this Court award Plaintiffs $127,992.28 for interest owed through September 27, 2010 and at a rate of $46.14 per day thereafter until entry of judgment.

## D. Liquidated Damages

Section 502(g)(2)(c) of ERISA, provides for additional interest or liquidated damages on unpaid contributions in "an amount equal to the greater of -- (I) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)." 29 U.S.C. § 1132(g)(2)(C). Similarly, the Trust Agreement provides for additional damages "equal to the greater of: (1) The amount of interest charged on the unpaid contributions, or (2) Liquidated damages in the form of 20 percent of the unpaid contributions." Cody 3/2/07 Decl. Exh. A, Trust Agreement Art. IX, § 3(d). The award of additional interest or liquidated damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA. Scotto v. Brink's Inc., 751 F. Supp. 355, 342 (E.D.N.Y. 1990); see also Idaho Plumbers & Pipefitters v. United Mechanical, 875 F.2d 212, 215 (9th Cir. 1989).

As determined above, the amount of interest owed on the contributions amounts to $127,992.28. Due to the lapse in time and high interest provided under the Trust Agreement, this amount far exceeds 20% of the unpaid contributions. I thus recommend that the Court award Plaintiffs liquidated damages in the amount of $127,992.28.

IV.  Attorney's Fees

The Funds also are entitled to reasonable attorneys' fees and costs.  29 U.S.C. 1132(g)(2)(D).  See also Trust Agreement, Art. IX, § 3.  The award of attorneys' fees is not discretionary.  See LaBarbera v. Clestra Heuserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004). Plaintiffs seek $24,690.50 in attorneys' fees related to the Defendant ASTC. Chun Decl. ¶ 19. (Ct. doc. 12).

In determining reasonable attorneys' fees, courts examine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees bears the burden of supporting its

claim of hours expended by accurate, detailed, and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). In lieu of contemporaneous time records, an applicant may submit summaries accompanied by affidavits stating that the summaries are accurate and based on contemporaneous records. Cruz, 34 F.3d at 1160. These records should specify, for each attorney, the date, hours expended, and the nature of work. Carey, 711 F.2d at 1148. It is not required that counsel describe in great detail how the time was spent, rather it is sufficient to identify the general subject matter of time expenditures. Perdue v. City Univ. of New York, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998).

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates are determined by examining the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. See Arbor Hill, 522 F.3d at 190-91.

Plaintiffs seek to recover $24,690.50 in attorneys' fees based on more than 83 hours of work done relating to Defendant ASTC Labs. Chun Decl. ¶ 19. (Ct. doc. 12). In support of their application, Plaintiffs' counsel submits billing summaries and contemporaneous time records related to this ligation for the period beginning May 8, 2006 through April 10, 2007. See Chun 4/16/07 Decl., Ex. C (time records)

Rates are set at $280.00 per hour for 72.65 hours of work performed by Jae W. Chun, and $390.00 per hour for 6.7 hours of work performed by William K. Wolf and 4.45 hours performed by Michael Bauman, both partners at the firm. Id. Mr. Chun is a 2001 graduate from Cornell Law School with seven years of experience in the labor/employee benefits field. Mr. Wolf, a 1986 graduate from Boston University School of Law, has over 24 years of experience in this field and Mr. Bauman, a 1990 graduate from Cardozo Law School, has over 20 years of relevant experience. I find the billing rates to be reasonable based on my knowledge of prevailing rates for such matters in New York. See LaBarbera v. D&R Materials, Inc., No.06 CV 2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007)(approving rate of $340 per hour).

Having reviewed the billing records submitted, I find that the time spent on this case of 72.65 hours of a senior associate's rates and 11.15 hours at partner's rates to be somewhat high in light of the fact the work related to a defaulting defendant and the type of issues involved. See Marton v. HST Roofing, Inc., No. 03 CV 4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb. 22,

2007)(awarding fees for 20 hours of attorney time and five hours for paralegal time in ERISA default judgment case); <u>LaBarbera v. David Liepper & Sons, Inc.</u>, No. 06 CV 137, 2006 WL 2423420, at *5 (E.D.N.Y July 6, 2006)(finding 17.7 hours reasonable in ERISA default judgment case).

According to the time sheets, roughly 35.45 hours were expended on alter ego research and discussions. Not only does the amount of hours expended on such research appear high for attorneys claiming to be experienced in the ERISA field, but some of the research clearly involved the dismissed defendant, ASTL. Further, roughly 27.8 hours were expended on the complaint and service related issues which should be allocated among all three defendants. As both these numbers seem high I recommend that the total number of hours be discounted by 20%, or 12.65 hours.

Furthermore, although Plaintiffs have apparently tried not to claim attorney time spent with respect to Defendant ASTL, which appeared but was ultimately dismissed, some of the hours claimed did relate solely to work on claims asserted against this defendant. Accordingly, I recommend that the Court not award fees for time reflected in entries dated 11/6/06 through the first half of entry dated 11/28/06, but not including entry dated 11/16/06. <u>See</u> Chun 4/16/07 Decl. Exh. C. These entries amount to 7.7 hours of Mr. Chun's time and 2 hours of Mr. Wolf's time, for a total of 9.7 hours.

Thus, I recommend awarding Plaintiffs 52.3 hours (72.65 –
12.65 – 7.7 ) at the $280 rate, and 9.15 hours (11.15 – 2.0) at
the $390 rate, for a total of $18,209.00.

V. Costs

Plaintiffs seek reimbursement for $690.00 in costs, including
the $350 court filing fee and $340 in service of process fees.
See Chun 4/16/07 Decl. ¶ 21.  Reasonable and identifiable out-of-
pocket disbursements ordinarily charged to clients are
recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763
(2d Cir. 1998).  Court filing fees are recoverable litigation
costs.  See New Leadership Comm. v. Davidson, 23 F. Supp.2d 301,
305 (E.D.N.Y. 1998) (awarding filing fee). Accordingly, I
recommend that Plaintiffs be awarded $690.00 in costs.

In addition, Plaintiffs seek reimbursement for $680.00 in
auditors' fees.  Chun Decl. ¶ 22.  Section 1132(g)(2) does not
expressly provide for an award of audit fees, but provides for
"such other legal or equitable relief as the court deems
appropriate."  Some courts have relied on this clause as a basis
for awarding Plaintiffs audit costs.  See Maquire v. America
Piles, Inc., No. 01 CV 9483, 2002 WL 31626972, at *1 (S.D.N.Y.
Nov. 21, 2002); Mason Tenders Dist. Council v. Envirowaste and
Transcontractors, Inc., No. 98 CV 4040, 1999 WL 370667, at *2
(S.D.N.Y. June 7, 1999).  In any event, the Trust Agreement
provides for the recovery of audit fees at the rate of $350 per
day "or such other amounts as the Trustees in their discretion
shall apply, plus travel expenses, for each day expended in

-27-

auditing the Employer."  Cody 3/2/07 Decl. Exh. A. Article IX,

Section 3(b).  The auditor claimed to have spent 8 hours on the

audit for this case and sought compensation at $85.00 per hour.

Jones 4/23/07 Decl.  As the Agreement says nothing of an hourly

rate, I recommend that the Court not award auditors fees based on

this claimed hourly rate.  Since 8 hours ordinarily represents one

common work day, Plaintiffs' should be awarded one day of auditors

fees. I therefore recommend that the Court award Plaintiffs

$350.00 in auditors fees.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the

Court grant Plaintiff default judgment in the amount of $93,560.55

in unpaid contributions, $127,992.28 in interest through September

27, 2010, and $127,992.28 in liquidated damages. I further

recommend awarding Plaintiffs' counsel $18,209.00 in attorneys

fees, $690.00 in costs and $350.00 in auditors fees.  In sum, I

respectfully recommend that the Court grant default judgment in

the amount of $368,794.11, plus interest at a rate of $46.14 per

day from September 27, 2020 until entry of judgment

A copy of this report and recommendation will be sent by

overnight mail or electronically to the parties on this date.

Objections to the Report and Recommendation must be filed with the

Clerk of Court, with a copy to the Honorable Dora L. Irizarry and

the undersigned, by September 27, 2010.  Failure to file

objections within the time specified waives the right to appeal.

<u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

       **SO ORDERED.**


Dated:    Brooklyn, New York
          September 10, 2010

                              _____/s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE


Copies mailed to:

ASTC LABORATORIES, INC.
110-02 15th Avenue
College Point, New York 11356
      and
214-41 42nd Avenue
Bayside, New York 11361